UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

JOSHUA LYNN WEST AND ALICIA
JANEE WEST,

Plaintiffs,

v.

SUMMIT COLLECTION SERVICES, INC.,
PINNACLE SERVCES INC. d/b/a SUMMIT
COLLECTION SERVICES,

Defendants.

Case No. 3:20-cv-00556-LRH-CSD

ORDER

Before the Court are Plaintiffs' two motions to strike (ECF Nos. 41, 46) and a motion for summary judgment (ECF No. 35). First, Plaintiffs Joshua West and Alicia West (the "Wests") filed a motion for summary judgment. ECF No. 35. Defendant Summit Collection Services ("Summit") responded to the motion (ECF No. 37), and the Wests replied to Summit's response (ECF No. 39). The Wests later filed a motion to strike evidence contained in Summit's response to the motion for summary judgment. ECF No. 41. Summit responded to the motion to strike (ECF No. 44), and the Wests replied to Summit's response (ECF No. 45). After that, the Wests filed a motion to strike evidence contained in Summit's response to the first motion to strike. ECF No. 46. Summit responded to this motion (ECF No. 47), and the Wests replied to Summit's response. For the reasons articulated below, the Court dismisses this case.

## I.    BACKGROUND

In 2017, the Wests joined Future Fitness, Inc. dba European Fitness Center ("European Fitness"), a gym in Reno, Nevada, and signed a contract for gym memberships. ECF No. 35 at 4–6. The Wests failed to make payments owed to European Fitness under the contract for the Wests'

gym memberships. ECF No. 37 at 4. Sometime thereafter, European Fitness assigned the debt to Summit (ECF No. 35 at 6), a debt collection agency (ECF No. 17 at 3). On September 27, 2019, Summit filed a debt collection complaint in the Reno Justice Court against the Wests, arguing that that the Wests owed it $828. ECF No. 17 at 4. Summit then served the Wests with the complaint and summons attached with a pink slip, claiming that the Wests owed Summit a total of $1,327.43. ECF No. 35 at 7. Specifically, the pink slip stated:

> In addition to the amount stated in the Complaint, Summit Collection Services is requesting the Court award fees and costs in accordance with the Nevada Revised Statute 18, inclusive. These fees and costs are as follows: Filing fees $71.00, Attorney fees $250.00, Pre-Judgment Interest/Penalties $143.43, Service of Process $35.00.

*Id*.

The Wests allege that Summit improperly requested "Pre-Judgment Interest/Penalties" that the contract does not legally entitle Summit to collect because the contract indicated that Summit does not charge an Annual Percentage Rate (APR). *Id*. However, according to Summit, the contract legally entitles Summit to collect more than $143.43 in "Pre-Judgment Interest/Penalties" under the "Late Charges" provision of the contract. *Id*. at 4. Summit also maintains that it reduced the "Pre-Judgment Interest/Penalties" amount because it followed its standard practice of reducing all high factored interest rate assignments to the legal rate that Nev. Rev. Stat. § 99.040 defines. *Id*.

On November 18, 2019, Summit e-mailed the Wests, seeking to collect a balance of $1,344.36. ECF No. 17 at 4.  On November 22, 2019, Mrs. West replied and offered to set up a voluntary payment plan if Summit agreed to drop all the late charges. ECF No. 37 at 11. That same day, Summit e-mailed the Wests, seeking to collect a debt of $1,196.90. ECF No. 17 at 4. Summit maintains that it reduced the amount stated in the November 18, 2019, e-mail to the amount stated in the November 22, 2019, e-mail in response to Mrs. West's offer to set up a payment plan; the Wests, on the other hand, suggest that the discrepancy exists because Summit sent the November 22, 2019, e-mail to correct the incorrect amount stated in the November 18, 2019, e-mail. ECF No. 35 at 19–20; ECF No. 37 at 11–12. Four days later, the Wests and Summit came to an agreement to resolve the debt: the Wests promised to pay $75 per week to retire the debt, and Summit

promised that post-judgment interest would not accrue unless the Wests defaulted on their promise. ECF No. 37 at 9–11. The Wests, however, defaulted on the first two scheduled payments. *Id.* at 10.

On December 13, 2019, Summit mailed the Wests a letter, seeking to collect a debt of $1,196.90. ECF No. 17 at 4. Fourteen days later, Summit obtained a default judgment against the Wests for $1,201.20. ECF No. 35-10 at 18–19. On January 27, 2020, the Wests received a document entitled "Execution[,]" which states that Summit entered a judgment in the amount of $1,201.20 against the Wests in the Reno Justice Court. ECF No. 35-10 at 18–19. The amount of debt that Summit sought to collect increased in each of the following months. ECF No. 17 at 4. Summit claims that the amount of debt changed after it obtained a default judgment due to the following three reasons: (1) the Reno Justice Court awarded post judgment interest; (2) Summit paid a $4.30 e-filing fee each time Summit e-filed a document; and (3) Summit paid a fee to garnish the Wests' wages. ECF No. 37 at 15.

The Wests filed this lawsuit in September 2020, alleging a violation of the Fair Debt Collection Practices Act 15 U.S.C. §§ 1692, et seq. ("FDCPA"). ECF No. 1 at 6. After litigating a few motions, the Wests deposed three individuals who worked for Summit during the time that Summit was attempting to resolve the Wests' debt—Brian Chew, Anita Taylor, and Deborah Robinson—and the Wests' counsel asked these individuals questions about issues relating to the contract and Summit's legal entitlement to collect the amounts stated on the pink slip and in the November 18 and 22, 2019, e-mails. ECF No 35-4 at 2.

The Wests now move for summary judgment. ECF No. 35.

## II.   LEGAL STANDARD

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, affidavits or declarations, stipulations, admissions, and other materials in the record show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the initial burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487–88 (1984)); *see also Idema v. Dreamworks, Inc.*, 162 F.Supp.2d 1129, 1141 (C.D. Cal. 2001).

To successfully rebut a motion for summary judgment, the nonmoving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. "The mere existence of a scintilla of evidence in support of the [party's] position [is] insufficient" to establish a genuine dispute; "there must be evidence on which the jury could reasonably find for the [party]." *Id.* at 252.

## III.   DISCUSSION

Before the Court addresses the motion for summary judgment, the Court will address various procedural arguments that Summit raised as well as the Wests' motions to strike. First, the Court will address a statute of limitation's issue and an Article III standing issue that were raised in Summit's response to the first motion to strike. ECF No. 37. The Court will then address the legal issues—such as alleged discovery violations under Rule 37(c)(1) of the Federal Rules of Civil Procedure, evidentiary objections made under Rule 56(c)(2) of the Federal Rules of Civil Procedure, and the sham declaration rule—that the Wests raised in each of their motions to strike.

4

ECF Nos. 41, 46. Finally, the Court will address the motion for summary judgment. Each of these matters will be handled in turn.

### A. Statute of Limitations

Summit argues that the statute of limitations expired two years before the Wests brought this lawsuit because the Wests felt that some of Summit's communications dating back to November 2017 harmed the Wests. ECF No. 37 at 13–15.

Section 1692k(d) states that an FDCPA action must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k. The FDCPA's statute of limitations period begins to run on the date the alleged FDCPA violation occurred, not on the date that the plaintiff discovers the alleged FDCPA violation. *Rotkiske v. Klemm*, 140 S. Ct. 355, 360 (2019); *see also Weinstein v. Mandarich Law Grp., LLP*, 798 F. App'x 88, 90–91 (9th Cir. 2019) (holding that the FDCPA's statute of limitations did not bar a claim brought within one year from the date that the earliest wage garnishment occurred).

Here, the earliest alleged violation occurred on October 3, 2019, and the Wests initiated this lawsuit on September 25, 2020. ECF No. 1. Thus, because the Wests brought this lawsuit within one year from the date that the earliest alleged FDCPA violation occurred, the FDCPA's statute of limitations does not bar the Wests' FDCPA claims.

### B. Article III standing

Summit argues that the Wests lack Article III standing because Summit's debt collection attempts did not actually harm the Wests. ECF No. 37 at 19–20.

To have Article III standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). An injury in fact must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 339. Even if a statute grants a plaintiff a statutory right and purports to authorize that plaintiff to sue to vindicate that right, that plaintiff does not automatically have Article III standing unless that plaintiff has suffered a concrete injury. *Id.* at 341. To find that the alleged injury to the plaintiff constitutes a concrete injury, a court must determine that the alleged injury to the plaintiff has a

"close relationship" to a harm "traditionally" recognized as providing a basis for a lawsuit in American courts. *Id.* Additionally, if the statutory violation does not actually harm the plaintiff or present a material risk of harm that has materialized, then the plaintiff has not suffered a concrete injury. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2211–12 (2021). For claims brought under Sections 1692e and 1692f of the FDCPA, the closest common-law analog to those claims is fraud, which required proof of detrimental reliance. *Adams v. Skagit Bonded Collectors, LLC*, 836 F. App'x 544, 546 (9th Cir. 2020); *see also Uvaldo v. Germaine L. Off. PLC*, No. CV-20-00680-PHX-JJT, 2022 WL 194536, at *1–3 (D. Ariz. Jan. 21, 2022).

Here, the Wests do not allege actual harm. *See* ECF No. 17. The amended complaint and the reply to the response to the motion for summary judgment includes a bare allegation of confusion and uncertainty. *Id.*; ECF No. 39 at 16. But, as the Ninth Circuit in *Adams* held, mere confusion and uncertainty, without more, does not constitute actual harm. *See Adams,* 836 F. App'x at 547.

The Wests' amended complaint and the reply to the response to the motion for summary judgment also do not support an inference that the Wests were ever at risk of detrimental reliance. *See* ECF No. 17; *see also* ECF No. 39 at 16. Nor does the amendment complaint suggest that the Wests detrimentally relied on Summit's debt collection requests. *See* ECF No. 17. However, the reply to the response to the motion for summary judgment suggests that the allegedly confusing information communicated to the Wests caused them to act to their detriment. *See* ECF No. 39 at 16–17. Specifically, the Wests claim that because Summit's debt collection requests confused them, they were unable to chart a proper course of action or determine how to resolve the debt before Summit entered a default judgment against them, which ultimately resulted in them both suffering from Summit garnishing Mr. West's wages. *Id.* The Court, however, finds that this does not amount to detrimental reliance. It would be one thing if the confusion caused the Wests to pay for something that they did not owe. *See Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067, 1068 (7th Cir. 2020). But the Wests never paid Summit. ECF Nos. 17, 35, 39. Also, this argument is too hypothetical, as the Wests suggest that they would have paid the debt had the information that Summit communicated to them not confused them, but they point to no facts to support this

6

suggestion. *See Adams,* 836 F. App'x at 547. The evidence, in fact, suggests otherwise. Namely, the Wests and Summit came to an agreement that prohibited Summit from collecting post-judgment interest so long as the Wests paid $75 per week until they paid off the debt. ECF No. 37 at 9–11. And even though this agreement did not confuse the Wests, as they understood and negotiated the terms of the agreement, the Wests still failed to pay Summit on the first two scheduled payments. *Id.* at 10. Thus, the Wests' argument that they would have paid the debt had the information that Summit communicated to them not confused them is unsupported—if anything, the Wests' conduct demonstrates that, regardless of if Summit's debt collection requests confused them, the Wests were never going to pay the debt.

The Wests also suggest that they have Article III standing because Summit's alleged Section 1692e violations have caused them to suffer informational injuries. ECF No. 39 at 17. Under the doctrine of informational injury, a plaintiff that is deprived of information has suffered a concrete injury if that plaintiff has a statutory right to that information. *See Spokeo*, 578 U.S. at 341–43. The Ninth Circuit in *Adams*, however, has made it clear that the doctrine of informational injury does not apply to Section 1692e violations. *See Adams,* 836 F. App'x at 547 n.2. Accordingly, the Wests do not have Article III standing.[1]

Even though the Court finds that the Wests lack Article III standing, which typically ends the analysis, the Court addresses the issues related to the motions to strike and the motion for summary judgment because the Court finds it beneficial to explain why the Wests would fail even if they had Article III standing.

### C. The Wests' motions to strike

The Wests argue that the Court should strike the declaration of Brian Chew and the declaration of Linda Gardner because they are sham declarations. ECF Nos. 41, 46. In the

---

[1] Summit also argues that if the Court finds that Summit exercised due care and that the Wests have incurred no damages, the Court will lack subject matter jurisdiction. ECF No. 37 at 13. In support of this argument, Summit cites *Lowry v. City of San Diego,* No. 11-CV-946-MMA WMC, 2012 WL 1154926, at *2 (S.D. Cal. Apr. 5, 2012). The *Lowry* case, however, is not about the FDCPA; it is about a Section 1983 claim and the role that a due care affirmative defense plays under Fourth Amendment excessive force claims. *Id.* Also, the court in *Lowry* stated that "[b]ecause the case does not address due care…Plaintiff has not persuaded the Court that this affirmative defense has no possible bearing on the subject matter of this litigation[,]" not that it would lack subject matter jurisdiction if it found that the defendant exercised due care. *Id.* Thus, Summit's argument fails.

alternative, the Wests argue that the declaration of Brian Chew and the declaration of Linda Gardner should be stricken because they violate Rule 37(c)(1). *Id.* The Wests also claim that Defendant's Exhibit C and Defendant's Exhibit D should be stricken because they violate Rule 37(c)(1). ECF No. 41. The Court analyzes each issue below.

       1.   <u>Sham Declarations</u>

The Wests argue that the declaration of Brian Chew and the declaration of Linda Gardner qualify as sham declarations because Summit intended to manufacture an issue of fact to avoid summary judgment when it chose to submit each declaration to the Court. ECF No. 41 at 2; ECF No. 46 at 2.

In the Ninth Circuit, if a party submits a declaration that contradicts prior deposition testimony in attempt to avoid summary judgment, the court will strike that declaration if that declaration manufactures an issue of fact. *Kennedy v. Allied Mut. Ins. Co*., 952 F.2d 262, 266 (9th Cir. 1991). This is known as the sham declaration rule. *Id.* To determine whether a declaration manufactures an issue of fact, a court must find that the inconsistency between a party's deposition testimony and the declaration is clear and unambiguous. *See Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012). However, if a declaration merely clarifies and explains deposition testimony, then the sham declaration rule does not apply. *Id.*

The Court begins its analysis with the issues relating to the declaration of Brian Chew. During Brian Chew's deposition, the Wests' counsel asked Brian Chew to explain why the amount Summit communicated to Mrs. West in an e-mail on November 18, 2019, is larger than the amount Summit communicated to Mrs. West in an e-mail on November 22, 2019. *See* ECF No. 35-5 at 21–22. Brian Chew answered that Summit obtained the first amount from Debtmaster, which included interest that accrued under Nev. Rev. Stat. § 99.040 from the date that the principal amount became due. *Id.* at 24. However, he did not explain why it accrued interest under Nev. Rev. Stat. §.99.040. *Id*. The Wests' counsel then asked Brian Chew if the first amount communicated contained post-judgment interest. *Id.* at 26. He answered, "that is correct[,]" but then changed his answer and said: "you're confusing post-judgment and pre-judgment. Or I am, one of the two." *Id*. To make matters worse, the Wests' counsel directed Brian Chew to the fact

that the contract states that Summit does not charge APR, but the Wests' counsel did not point out the "Late Charges" provision to him. *See id.* at 27. All of this suggests that Brian Chew was confused and had a poor recollection of the facts during his deposition. His declaration clarifies and explains his prior deposition testimony. ECF No. 37-1. For example, in his declaration, he explains that the "Late Charges" provision of the contract allows Summit to collect 5% interest per month—60% APR—on the unpaid balance, and that Summit sought the lesser of the statutory rate of a 5.25% APR. *Id.* at 2–3. This demonstrates how Debtmaster calculated the debt amounts, which clarifies how Summit obtained the amount from Debtmaster. Accordingly, the Court finds that the declaration of Brian Chew is not a sham declaration.

The declaration of Linda Gardner is also not a sham declaration. Her declaration clarifies and explains certain parts of her testimony. For example, during her deposition, the Wests' counsel asked her to point out the provision of the contract that gives Summit permission to collect interest, and she answered that she could not "read it good enough on [that] one to verify any of that." ECF No. 35-8 at 4. Her declaration explains that she was confused during her deposition, and that she answered that question the way that she did because the copy of the contract that she was provided during her deposition was blurry and difficult to read. *See* ECF No. 44-1 at 2. Moreover, in her declaration, she explains why Summit reduced the balance from $1,344.36 to $1,196,90 on November 22, 2019. *See* ECF No. 44-1 at 1–3. She specifically states that Brian Chew gave her permission, and that she and Mrs. West agreed to set up a payment plan. *Id.* Her deposition testimony supports this. *See* ECF No. 35-8 at 11 ("I went in and looked at all the documents and asked—told Brian, I was like, I can't read this part down here about the—what is it called? The penalty—the late charges. That's it. And the contract said zero percent interest, so I backed all that out. I backed the interest, and put it at zero like Brian said…he was like I don't even care. Don't charge it. Don't invest—don't spend no more time. We're going to do zero percent and not charge the late fees."). Furthermore, Exhibit 11 attached to the Wests' motion for summary judgment suggests that Summit reduced the amount the Wests owed to Summit in response to Mrs. West's earlier offer to set up a payment plan. *See* ECF No. 35-15 at 7. The Court, therefore, finds that the sham declaration rule does not apply to the declaration of Linda Gardner.

2. Rule 37(c)(1)

The Wests claim that Defendant's Exhibit C, Defendant's Exhibit D, the declaration of Brian Chew, and the declaration of Linda Gardner violate Rule 37(c)(1) because Summit did not disclose or produce each document during discovery in this case. ECF No. 41; ECF No. 46 at 6.

If a party fails to provide information that Rule 26(a) and Rule 26(e) require, that party is not allowed to use that information to supply evidence on a motion. Fed. R. Civ. P. 37(c)(1). Under the relevant subsection of Rule 26(a), if a party possesses documents that it plans to use to support its defense, then it must provide a copy of these documents to the other party. Fed. R. Civ. P. 26(a)(ii). If a party learns that in some material respect that the disclosure is incomplete after the discovery period has ended, then Rule 26(e) requires that party to supplement or correct the incomplete disclosure. Fed. R. Civ. P. 26(e)(1)(A). Also, if the court orders a party to supplement its earlier disclosure under Rule 26(e), then that party must supplement that disclosure. Fed. R. Civ. P. 26(e)(1)(B). When a party violates Rule 37(c)(1), that party can escape the harshness of the exclusion if that party proves that the discovery violation is substantially justified or harmless. Fed. R. Civ. P. 37(c)(1); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.,* 259 F.3d 1101, 1107 (9th Cir. 2001).

Starting with Defendant's Exhibit C, the Court finds that it does not run afoul to Rule 37(c)(1). Exhibit C charts and itemizes the accrued late charges/penalties. ECF No. 37-4 at 2. The Wests claim that Summit never disclosed this document to them when they met and conferred with Summit. ECF No. 41 at 7. In response, Summit argues that it did provide the Wests with this information via e-mail and that it provided earlier accurate disclosures, such as the contract and the ledger of charges. ECF No. 44 at 14–15. The Court, however, ordered Summit to provide the Wests with an accounting of the debt, including how it was calculated (ECF No. 34 at 4), and Summit did not do so (ECF No. 44). But even if this amounts to a violation of Rule 26(e), Summit has met its burden of demonstrating that the discovery violation is harmless. Specifically, Summit points out that the governing contract states that the Wests will be charged 5% interest each month on the outstanding debt. ECF No. 44 at 14. The Wests also attached Exhibit 5 in their motion for summary judgment, which is a copy of the Debtor Assignment form. ECF No. 35-4 at 2. That form

makes clear that the Wests initially owed Summit $828. *See* ECF No. 35-9 at 2. Based on these documents, the Wests could have easily calculated the amounts found on Defendant's Exhibit C. Accordingly, the Court finds no reason to exclude Defendant's Exhibit C under Rule 37(c)(1).

Turning to Defendant's Exhibit D, the Court finds that it does not violate Rule 37(c)(1). Exhibit D contains two e-mails that Summit's attorney, Cliff Young, sent to the Wests' attorney, Gustavo Ponce. *See* ECF No. 37-5. These e-mails do not introduce new evidence. The first e-mail clarifies and explains some of the exhibits that the Wests' counsel used in Deborah Robinson's deposition and Brian Chew's deposition. *See id.* at 2–3. For example, during Deborah Robinson's deposition, the Wests' counsel asked her to explain why the amount on the "Pre-Judgment Interest/Penalties" stated on the pink slip is different from the amount stated in the November 22, 2019, e-mail, and she answered: "I don't know. Linda did it, so you'll have to ask Linda Gardner." ECF No. 35-6 at 17. The Wests' counsel also asked Brian Chew a similar question during his deposition, and Brian Chew did not provide a clear answer. *See* ECF No. 35-5 at 26. The first e-mail in Defendant's Exhibit D explains that the amounts differed because Linda Gardner subtracted interest from the balance due. ECF No. 37-5 at 2. The second e-mail explains parts of Anita Taylor's deposition. *Id.* at 4. Specifically, during Anita Taylor's deposition, the Wests' counsel asked her if anything else was attached to the assignment form that European Fitness sent her, and she answered that she did not remember. ECF No. 35-7 at 5. After that, the Wests' counsel asked her if anything else would be attached to the assignment sheet, and she stated: "it looks like what's on here is what we get." *Id.* The second e-mail in Exhibit D explains that Anita Taylor did not actually know if European Fitness sent her all the right documents and that she was speaking from her general experience with dealing with European Fitness. ECF No. 37-5 at 4. At no point do either of the e-mails raise evidence that implicates Rule 37(c)(1) because neither e-mail introduces new evidence; both e-mails merely clarify and explain deposition testimony. Accordingly, the Court finds that Rule 37(c)(1) does not bar Defendant's Exhibit D.

Lastly, the Court finds that the declaration of Brian Chew and the declaration of Linda Gardner do not violate Rule 37(c)(1). As discussed above, both declarations clarify and explain statements made during their depositions. Neither of the declarations introduce new evidence. *See*

ECF No. 37-1; *see also* ECF No. 44-1. Accordingly, the Court finds no reason to exclude the declaration of Brian Chew or the declaration of Linda Gardner under Rule 37(c)(1).

**D.  The West's Evidentiary Objections**

The Wests' object to Defendant's Exhibits C and D, and to specific portions of the declarations of Brian Chew and Linda Gardner. ECF No. 41; ECF No. 46.

Under Rule 56(c)(2) of the Federal Rules of Civil Procedure, a "party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

The Court analyzes each issue below.

1. <u>The West's Evidentiary Objections to the declaration of Brian Chew and the declaration of Linda Gardner</u>

The Wests submitted boilerplate relevance, hearsay, foundation, speculation, and lay opinion objections to several lines and paragraphs of the declarations of Brian Chew and Linda Gardner. ECF No. 41 at 3–6; ECF No. 46 at 3–5. The Wests also raised hearsay objections to the entirety of both declarations. ECF No. 41 at 6; ECF No. 46 at 5. However, objections to evidence on the ground that it is irrelevant, speculative, or an improper opinion are all duplicative of the summary judgment standard itself, and thus should be disregarded at the summary judgment stage. *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 665 (9th Cir. 2021); *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006); *Alejandre v. Cnty. of San Joaquin*, No. 219CV00233WBSKJN, 2021 WL 1549666, at *6 (E.D. Cal. Apr. 20, 2021). Hearsay objections to a document in its entirety should be overruled when the objected-to document reflects the personal knowledge of an individual who could be called to testify at trial. *See Sandoval*, 985 F.3d at 666. Finally, hearsay and foundation objections to specific portions of a document should be overruled when the objecting party does not explain their basis for objecting. *Id*. at 666–67.

The Court will not entertain objections that were not explained in the briefing. *See* ECF Nos. 41, 46 (raising relevance, hearsay, characterization, unfair prejudice, confusion of issues, and waste of time objections). Out of all their objections, the Wests explain only the misstates evidence

objections and the Section 1746 objections to the declarations of Brian Chew and Linda Gardner. ECF No. 41 at 6; ECF No. 46 at 3–5.

Starting with the misstates evidence objections, the Wests argue that paragraph 1 of the declaration of Linda Gardner misstates Mrs. West's e-mail—where she stated that the Wests "are willing to pay the fair amount owed"—because the Wests were merely requesting a breakdown of the balance. *Id.* at 3. This argument is meritless because Mrs. West states that she was "following up regarding setting a payment plan" at the beginning of the e-mail (ECF No. 35-12 at 8), which suggests that she was not merely requesting a breakdown. The Wests also argue that the first sentence of paragraph 8 of the declaration of Linda Gardner misstates Linda Gardner's e-mail to the Wests because she states in that e-mail that "interest won't start until we are granted the Default Judgment[,]" not "no interest charged if they made payments as promised." *Id.* at 5. As Summit points out, this argument also lacks merit because Linda Gardner told the Wests that Summit would not seek a default so long as they made payments. ECF No. 47 at 15–16. This amounts to two ways of stating the same thing. Accordingly, the Court overrules the misstates evidence objections.

The Section 1746 objections to the entirety of the declarations of Brian Chew and Linda Gardner are also overruled. To be admissible, a declaration must be signed and subscribed in writing that is substantially similar to the following language: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date)." 28 U.S.C. § 1746; *see also Beattie v. Haleen*, No. CV 18-3372-JGB(E), 2021 WL 1300395, at *5 (C.D. Cal. Mar. 2, 2021). Here, both Linda Gardner and Brian Chew subscribed and swore in writing in Washoe County, Nevada, and both declarations contained the following information: (1) an affirmation that each and every assertion is true; (2) an affirmation that their own knowledge is true, and that they believe that everything that they stated is true; and (3) a date and a signature. ECF No. 37-1; ECF No. 44-1. Accordingly, the Court finds this to be substantially similar to the language in Section 1746, and it overrules the Section 1746 objections.

Finally, although the Wests do not explain the best evidence objection to paragraph 10 of the declaration of Brian Chew, the Court will entertain the merits of this objection because it is clear that the Wests are objecting to Summit providing Brian Chew's description of the contents

of Linda Gardner's offer to the Wests rather than providing the original copy of the offer. *See* Fed. R. Evid. 1002. The Court, however, overrules the objection because the contents of the declaration of Brian Chew are admissible. At the summary judgment stage, a court does not focus on the admissibility of the evidence's form; a court focuses on the admissibility of its contents instead. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). Here, even though the evidence is likely not admissible in its current form, Linda Gardner could testify at trial about the offer she made to the Wests, and that testimony would be admissible. *See* Fed. R. Evid. 1007. Accordingly, the Court overrules the best evidence objection.

### 2. The Wests' Evidentiary Objections to Exhibits C and D

The Wests object that Defendant's Exhibit C lacks authentication, lacks foundation, and is hearsay. ECF No. 41 at 4–5. However, these objections lack merit—the contents of the e-mails are admissible because they are based merely on math calculations done in accordance with the "Late Charges" provision of the contract. ECF No. 44 at 13. Accordingly, the Court overrules the objections.

The Wests also raise lack of authentication, lack of foundation, relevance, hearsay, unfair prejudice, confusion of issues, and waste of time objections to Defendant's Exhibit D. ECF No. 41 at 8.  With the exception of the explanation for the foundation objection, the Wests do not explain any of their objections. However, the explanation for the foundation objection—that Brian Chew does not have personal knowledge of the e-mail contained in Defendant's Exhibit D because he was not the author of it—lacks merit for two main reasons. ECF No. 37-5 at 2. First, Brian Chew does not need to be the person who wrote the e-mail in order to have personal knowledge; it is possible that Brian Chew has personal knowledge because he is aware of the contents and the information contained in the e-mail. Second, even if Brian Chew does not have personal knowledge of the information contained in the e-mail, Summit could introduce other forms of admissible evidence that contains the same contents as this e-mail, or Summit could call other witnesses—like Linda Gardner—who have personal knowledge to testify at trial. Thus, the Court overrules the foundation objection. This same reasoning applies to the hearsay objection. And to

the extent the Wests intended to object to only parts of the e-mail, their unexplained hearsay objection was insufficient to raise such an objection. *See Sandoval*, 985 F.3d at 666.

As to the prejudice, confusion of issues, and waste of time objections, the Court overrules these objections. In addition to not providing an explanation, the Wests do not point to facts stated in the e-mail that are unfairly prejudicial, cause confusion, or waste time. There may be beliefs or opinions stated in that e-mail that are unfairly prejudicial, cause confusion, or waste time; however, beliefs and opinions are not facts, and the Court does not consider beliefs and opinions in its determination on the motion for summary judgment because they are superfluous in this context. *See id.* at 665; *see also Burch*, 433 F. Supp. 2d at 1119. Lastly, because relevance objections are duplicative of the summary judgment standard itself, the Court overrules the relevance objection. *See Sandoval*, 985 F.3d at 665; *see also Burch*, 433 F. Supp. 2d at 1119.

### E. The Wests' Motion for Summary Judgment on Their FDCPA Claims

The Wests maintain that they are entitled to summary judgment because Summit's attempts to collect different amounts of debt—amounts that the Wests claim that the contract or any other legal document did not legally entitle Summit to collect—confused them and violated the FDCPA.

Congress enacted the FDCPA to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). To bring an FDCPA claim, a plaintiff must prove that the defendant violated a provision of the FDCPA; however, the FDCPA does not require the plaintiff to prove that the defendant intentionally violated the FDCPA, as the FDCPA is a strict liability statute. *See Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1061 (9th Cir. 2011). Moreover, the Ninth Circuit analyzes FDCPA claims according to the "least sophisticated debtor" standard. *Wade v. Reg'l Credit Ass'n*, 87 F.3d 1098, 1100 (9th Cir. 1996). The least sophisticated debtor standard is an objective analysis that takes into account whether the debt collector's communication would mislead the least sophisticated debtor. *See Gonzales*, 660 F.3d at 1061. If a court determines that the debt collector's communication would mislead the least sophisticated debtor, then the debt collector has violated a provision of the FDCPA, thus making

the debt collector liable under the FDCPA. *See Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1033 (9th Cir. 2010).

In their motion for summary judgment, the Wests specifically claim that Summit violated subsections 1692e, 1692e(2), 1692e(10), 1692f, and 1692f(1) of the FDCPA. ECF No. 35 at 11–12. The Court analyzes each claim in turn.

1.   The Wests' Section 1692e Claims

The Wests argue that no triable issue of fact exists that Summit's debt collection attempts violated subsections 1692e, 1692e(2), and 1692e(10) of the FDCPA on the following three occasions: (1) when Summit served the Wests with a pink slip attached to the collection complaint because the pink slip contained false, deceptive, and/or misleading representations regarding the amount of the debt owed as well as its entitlement to collect any interest; (2) when Summit sent the Wests e-mails regarding the amount of debt that the Wests owed Summit because the amounts stated in those e-mails were false, deceptive, and/or misleading; and (3) when Summit sought a default judgment on December 27, 2019, for an amount that differed from the amounts it had previously threatened to collect—those threats were false, deceptive, and/or misleading representations regarding the amount of debt owed and Summit's intention to collect. ECF No. 35 at 14, 17–20.

Section 1692e prohibits a debt collector from using "any false, deceptive, or misleading representations or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Section 1692e(2) prohibits the false representation of "the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2). Section 1692e(10) prohibits the use of "any false representation or deceptive means to collect or attempt to collect any debt." 15 U.S.C. § 1692e(10). To be actionable under the FCPA, a debt collector's false, deceptive, or misleading representations must be "material." *Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1119 (9th Cir. 2014); *see also Donohue*, 592 F.3d at 1033 (stating that an immaterial statement—even if it is false in some technical sense—does not violate the FDCPA). Only genuinely misleading statements that frustrate a consumer's ability to intelligently choose his or her response are material. *Id.* at 1034.

As to the claims pertaining to the pink slip, the amount stated on the pink slip is not a false, deceptive, or misleading communication. Although the Wests argue that the "Pre-Judgment Interest/Penalties" amount stated on the pink slip improperly requests an amount that Summit is not legally entitled to collect because the contract stated that Summit does not charge an APR (ECF No. 35 at 17), the contract has a "Late Charges" provision, which essentially allows Summit to charge a 60% APR on the unpaid balance (ECF No. 37 at 4). The "Late Charges" provision legally entitles Summit to collect up to $456.48, but it chose to collect $143.43—the "Pre-Judgment Interest/Penalties" amount stated on the pink slip—because it reduced the penalty interest factor from a 60% APR to a 5.25% APR. ECF No. 37 at 4–5. Summit chose a 5.25% APR because Summit followed its standard practice of reducing high factored interest rate assignments to the legal rate that Nev. Rev. Stat. § 99.040 defines. *Id.* This demonstrates that Summit did not misstate the amount of debt that the Wests owed, as the "Pre-Judgment Interest/Penalties" amount stated on the pink slip did not state an incorrect amount. But even if the "Pre-Judgment Interest/Penalties" amount stated on the pink slip misstated the debt that the Wests owed, the "Pre-Judgment Interest/Penalties" amount stated on the pink slip did not materially misrepresent the debt that the Wests owed because Summit understated the amount of debt that the Wests owed— the "Late Charges" provision legally entitled Summit to a larger amount than the "Pre-Judgment Interest/Penalties" amount stated on the pink slip. *See Cummings v. Jaburg & Wilk, P.C.*, 711 F. App'x 418 (9th Cir. 2018); *see also Donohue*, 592 F.3d at 1034. Furthermore, even though the "Pre-Judgment Interest/Penalties" amount stated on the pink slip did not include interest but instead included late charges, the literal label would not mislead the least sophisticated debtor because the least sophisticated debtor is concerned only with the total amount, which was correctly stated; mislabeling portions of the total debt is meaningful only to the "hypertechnical" reader, not the least sophisticated debtor. *Tourgeman*, 755 F.3d at 1121; *see also Donohue*, 592 F.3d at 1034. The Wests also attempt to argue that the "Pre-Judgment Interest/Penalties" amount stated on the pink slip is false, deceptive, and/or misleading because Summit's legal assistant, Linda Gardner, stated in her deposition that the amount stated on the pink slip is incorrect. ECF No. 35 at 17. But, as previously discussed, her deposition testimony is unreliable because she was confused and had

a poor recollection of the facts during her deposition. Thus, because the "Late Charges" provision legally entitled Summit to collect a larger amount than the "Pre-Judgment Interest/Penalties" amount stated on the pink slip, the "Pre-Judgment Interest/Penalties" amount stated on the pink slip would not mislead the least sophisticated debtor.

Turning to the claims pertaining to the e-mail communications, the amounts stated in the e-mails were not false, deceptive, and/or misleading. There are two e-mails at issue: (1) the November 18, 2019, e-mail stating that the Wests owed $1,344.36; and (2) the November 22, 2019, e-mail stating that the Wests owed $1,196.90. ECF No. 35 at 18. In their motion for summary judgment, the Wests argue that the amount stated in the November 18, 2019, e-mail is incorrect for a few reasons.[2] *Id.* First, the Wests suggest that the amount stated in the November 18, 2019, e-mail is incorrect because it included interest, which Summit should not have included because Summit represented in the later November 22, 2019, e-mail that interest would not accrue until Summit obtains a default judgment. *Id.* Second, the Wests point to the fact that November 22, 2019, e-mail states a smaller amount than the amount stated in the November 18, 2019, e-mail, suggesting that the discrepancy exists because Summit sent the November 22, 2019, e-mail to correct the incorrect amount stated in the November 18, 2019, e-mail. *Id.* at 18–19. The Wests claim that these e-mails contained materially misleading statements that frustrated their ability to intelligently choose a response. *Id.* at 18. The Wests would be correct if the contract or any other legal document did not legally entitle Summit to collect the amount stated in both e-mails. *See Donohue*, 592 F.3d at 1033–34. However, that is not the case here. The amount stated in the November 18, 2019, e-mail is about $16.93 larger than the amount stated on the pink slip. This increase is due to the e-filing fees and the late charges calculated at a 5.25% APR. ECF No. 47 at 9; ECF No. 35-13. Moreover, the amounts differed in the e-mail correspondence because the amount in the November 18, 2019, e-mail included the late charges, while the amount in the November 22, 2019, e-mail did not include the late charges—Linda Gardner reduced the late charges amount in response to Mrs. West's request to set up a payment plan. ECF No. 37 at 10–

---

[2] The Wests cite Linda Gardner's testimony as evidence that the amount stated in the November 18, 2019, e-mail is incorrect; however, as previously stated, her deposition testimony is unreliable because she was confused and had a poor recollection of the facts during her deposition.

12; ECF No. 35-13. Thus, the fact that the amount in the November 18, 2019, e-mail was smaller than the amount in the November 22, 2019, e-mail would not mislead the least sophisticated debtor because Summit was legally entitled to collect the amounts stated in each e-mail.

Lastly, the representations to the Wests regarding the amount of debt owed and Summit's intentions to seek a default judgment were not false, deceptive, or misleading. Although the Wests argue that Summit did not intend to and was not legally entitled to collect the amount stated on the pink slip or the amount stated in the November 18, 2019, e-mail because Summit sought to collect a different amount in the December 27, 2019, default judgment (ECF No. 35 at 19–20), it is clear that the amount sought in the December 27, 2019, default judgment did not include the late charges—as previously stated, Linda Gardner reduced the late charges amount in response to Mrs. West's request to set up a payment plan (ECF No. 37 at 11). Thus, the amount stated in the December 27, 2019, default judgment would not mislead the least sophisticated debtor because Summit was legally entitled to collect the amounts stated on the pink slip or in the November 18, 2019, e-mail, or any lesser amount like the amount stated in the December 27, 2019, default judgment. Accordingly, if the Court had standing, it would grant summary judgment in favor of Summit with respect to the Wests' Section 1692e claims.

### 2. The Wests' Section 1692f claims

The Wests also argue that no triable issue of fact exist that Summit violated subsections 1692f and 1692f(1) on the following three occasions: (1) when Summit served the Wests with a pink slip that contained an amount of interest that the contract or any other legal document did not legally entitle Summit to collect; (2) when Summit sent the Wests e-mails that requested amounts of debt that the contract or any other legal document did not legally entitle Summit to collect; and (3) when Summit sought a default judgment on December 27, 2019, for a different amount than the amounts it had previously threatened to collect—those threats contained amounts of debt that the contract or any other legal document did not legally entitle Summit to collect. ECF No. 35 at 14, 17–20. As evidence, the Wests cite the same legal arguments that they made in support of their Section 1692e claims. *Id.* However, as stated above, because Summit was legally entitled to collect all amounts that it requested from the Wests, the amounts that Summit requested to collect from

the Wests would not mislead the least sophisticated debtor. Accordingly, the Court would deny the Wests' motion for summary judgment on their Section 1692f claims.[3]

Overall, although the FDCPA's statute of limitations does not bar the Wests' lawsuit because the Wests brought this lawsuit within one year from the date that the earliest alleged FDCPA violation occurred, the Court dismisses the Wests' case because the Wests lack Article III standing. The Wests lack Article III standing because the Wests' bare allegation that Summit's debt collection requests confused them did not actually harm the Wests or present them with a material risk of harm that has materialized. And although the Wests maintain that the confusion caused them to act to their detriment because the confusion caused them to fail to pay Summit on time, the confusion did not cause the Wests to act to their detriment because the evidence of the agreement that established a payment plan for the Wests—an agreement that did not confuse the Wests, as they understood and negotiated the terms of the agreement—and the evidence of the Wests failure to pay their first two scheduled payments in accordance with that payment plan demonstrates that confusion was not the reason that they failed to pay Summit on time. But even if the Court were to find that the Wests have Article III standing, the Wests' case would still end here because there is no triable issue of fact that Summit did not violate any provision of the FDCPA. At no point did Summit overstate the amount of debt that the Wests owed, nor did Summit ever attempt to collect an amount of debt that it was not legally entitled to collect; Summit sought late charges in accordance with the "Late Charges" provision, and Summit reduced the amount of debt owed numerous times in attempt to settle the issue. Simply put, the Wests have no viable claim.

///

///

///

///

---

[3] Summit also asks this Court to sanction the Wests under Rule 11(c)(3) of the Federal Rules of Civil Procedure. ECF No. 44 at 18. However, under Rule 11(c)(3), a court must issue a show cause order before it imposes sanctions on its own initiative. *See* Fed. R. Civ. P. 11(c)(3). A show cause order will ordinarily be issued only in situations that are akin to a contempt of court, and the Court finds that such circumstances do not present themselves here. Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment.

1  **IV.  CONCLUSION**

2  IT IS THEREFORE ORDERED that this action is dismissed without prejudice as the

3  Wests' lack Article III standing.

4  IT IS FURTHER ORDERED that the Wests' motion to strike Defendant's Exhibit C,

5  Defendant's Exhibit D, and the declaration of Brian Chew (ECF No. 41) is **DENIED** as moot.

6  IT IS FURTHER ORDERED that the Wests' motion to strike the declaration of Linda

7  Gardner (ECF No. 46) is **DENIED** as moot.

8  IT IS FURTHER ORDERED that the Wests' evidentiary objections (ECF Nos. 41, 46) are

9  all **OVERRULED** as moot.

10  IT IS FURTHER ORDERED that the Wests' motion for summary judgment (ECF No. 35)

11  is **DENIED** as moot.

12  IT IS SO ORDERED.

13  DATED this 26th day of July, 2022.

14  LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28